UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY ORTIZ-SANTIAGO,<br>    Plaintiff,<br><br>v.<br><br>OSBORN CORRECTIONAL FACILITY,<br>    Defendant. | No. 3:24-cv-1198 (SRU) |

## RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Ordinarily, a plaintiff who files a civil complaint must pay filing and administrative fees totaling $405. *See* 28 U.S.C. § 1914. The plaintiff, Jeffrey Ortiz-Santiago, is an inmate at the Osborn Correctional Institution. He has applied for leave to proceed *in forma pauperis* ("IFP"). Proceeding IFP would allow Ortiz-Santiago to pursue his case without prepaying the $405 filing fee. For the following reasons, his motion is **denied**.

A federal law allows inmates to commence civil actions without pre-paying the filing fee when, among other requirements, they submit affidavits showing that they are "unable to pay." 28 U.S.C. § 1915. Inmates seeking IFP status must show that the burden of prepaying the filing fee would force them to forgo "the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). In applying the "necessities of life" standard in the prison context, courts take note of the fact that many of a prisoner's necessities are provided to him by the government. As the Second Circuit has explained, "what constitutes the 'necessities of life' that must be purchased is obviously different for prisoners, most of whose necessities are paid for by the jurisdiction that incarcerates them." *In re Epps*, 888 F.2d 964, 967 (2d Cir. 1989). But they

1

nevertheless "maintain their own, often complex, economic lives," and so the Court must consider all of their obligations when determining if they are able to prepay the filing fee. *Rosa v. Doe*, 86 F.4th 1001, 1009 (2d Cir. 2023). Paying the fee should not leave them "wholly destitute," and they should not be forced to "last dollar they have or can get" to proceed with their claims. *Adkins*, 335 U.S. at 339.

The statute requires that prisoners who request leave to proceed IFP submit "an affidavit that includes a statement of all assets" they possess and "a certified copy of the trust fund account statement . . . for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a). With that information, the Court determines whether each applicant qualifies for IFP status.

When a prisoner's inmate trust account balance is lower than the filing fee, courts often grant leave to proceed IFP. In *Simmons v. Torres*, for example, an inmate filed a petition for a writ of habeas corpus, which ordinarily requires a $5.00 filing fee. No. 3:07-cv-1409 (VLB), 2007 WL 3171356, at *1 (D. Conn. Oct. 26, 2007). Because he "provided a copy of his inmate account statement reflecting a spendable balance of $0.43," District Judge Vanessa Bryant granted his motion to proceed IFP. *Id.*

Yet courts typically deny IFP motions when the inmate's low trust account balance is a result of his own voluntary spending decisions. When "considering a prisoner's affidavit of indigence, the district court may inquire whether, if a prisoner has no cash credit at the moment of filing, he had disabled himself by a recent drawing on his account and if so, for what purposes." *Hinton v. Pearson*, No. 3:21-cv-863 (MPS), 2021 WL 3036921, at *2 (D. Conn. July 19, 2021) (quoting *Miller v. Brown*, No. CV 112-166, 2013 WL 1346826, at *2 (S.D. Ga. Feb.

21, 2013)) (quotation marks omitted). In *Hinton*, the plaintiff had only $132.91 in his trust account at the time he filed his suit. *Id.* at *1. But his account statement revealed that he had received over $3,500.00 in the preceding six months, money that he "chose to spend . . . in the commissary or send . . . out of the facility." *Id.* at *2. Because "[t]he plaintiff had sufficient funds to pay the filing fee . . . but chose to spend those funds on other things to render himself eligible for [IFP] status," the Court denied his IFP motion. *Id. See also Clark v. Pappoosha*, No. 3:21-cv-1690 (CSH), 2022 WL 960296, at *2 (D. Conn. Mar. 30, 2022) (denying IFP motion in part because inmate "received a total of $1,645.00 in deposits during a six-month period prior to filing [his] action," yet "made numerous personal withdrawals"); *Brown v. Ruiz*, No. 3:20-cv-1202 (KAD), 2020 WL 6395480, at *1 (D. Conn. Nov. 2, 2020) (denying IFP motion because inmate "had deposits exceeding $3,850.00 in the seven months prior to filing [his] action," but "made purchases at the commissary and regularly sent money out of the facility.").

    Before denying an IFP motion on account of an inmate's spending, however, courts must consider whether the inmate's expenditures were necessary. As noted above, a litigant is entitled to proceed IFP if he shows that he cannot simultaneously pay the filing fee and afford "the necessities of life." *Adkins*, 335 U.S. at 339. And although the Second Circuit has observed that "what constitutes the 'necessities of life' . . . is obviously different for prisoners, most of whose necessities are paid for by the jurisdiction that incarcerates them[,]" *In re Epps*, 888 F.2d 964, 967 (2d Cir. 1989), it has also observed that inmates sometimes have "financial obligations" such as "medical debts, court fees, student loans[,]" and family support orders. *Rosa v. Doe*, 86 F.4th 1001, 1009 (2d Cir. 2023). Those obligations "warrant consideration," and can support IFP status even when the inmate's account balance exceeds the filing fee by a meaningful amount. *Id.* The

plaintiff in *Rosa*, for example, claimed to "support[ ] his mother and son with monthly payments totaling $86.66," and he was therefore entitled to IFP status even though his account balance exceeded the filing fee by $174.98. *Id.* at 1005-06, 1009-10.

When analyzing a plaintiff's deposits and withdrawals, courts should particularly consider the period when he is "contemplating litigation." *Hinton*, 2021 WL 3036921 at *2. *See also Clark*, 2022 WL 960296, at *1 (denying IFP status because "Clark was aware of the facts underlying the claims he seeks to advance in this action; but instead of his using his resources to file his claim, he first chose to make numerous purchases.").

Here, Ortiz-Santiago provided a certified copy of his inmate trust account statement as required by 28 U.S.C. § 1915.

The Court notes that Ortiz-Santiago's complaint arises out of the conditions at Osborn Correctional Institute. Compl., Doc No. 1, at 4. A class action bringing similar claims was decertified on March 6, 2024. *See* Notice (Other), *Toliver v. Semple et al.*, No. 16-cv-01899 (D. Conn. Mar. 6, 2024). The Court presumes that Ortiz-Santiago believed he was included in the class and was unaware that he would need to file this action until that date. The Court therefore acknowledges that the sums he spent before March 6, 2024, likely were not for the calculated purpose of rendering himself eligible for IFP status, because it was unlikely that he contemplated filing this suit.

However, Ortiz-Santiago's current period of incarceration at Osborn CI only began on April 5, 2024, after the *Toliver* class was decertified.[1] Since his incarceration, Ortiz-Santiago has

---

[1] The Court takes judicial notice of the Connecticut DOC website, which reflects that Ortiz-Santiago was admitted on April 5, 2024, and that he was sentenced on July 10, 2024, to a term of

received a total of $626.00 of deposits into his inmate trust account, which averages to $218.00 in deposits per month. *See* Doc. No. 3. Ortiz-Santiago has also spent a total of $717.87, almost exclusively at the commissary and "JPay Media." *Id.* Given that Ortiz-Santiago stated in his IFP application that he spends $0.00 a month on basic necessities not provided by the DOC, and that he does not contribute any money to the support of family members or others, I must conclude that Ortiz-Santiago's spending was on non-essential items. *See* Doc. No. 2, at 3. If the money Ortiz-Santiago had received in the months prior to filing his lawsuit had been saved, he would have had more than enough money to pay the filing fee. Ortiz-Santiago instead chose to "disable himself" by spending those funds on non-essential items. *See Hinton*, 2021 WL 3036921 at *2; *Clark*, 2022 WL 960296 at *2 (citing multiple commissary and JPay Media purchases as a reason to deny IFP status).

The Court concludes that Ortiz-Santiago's inability to pre-pay the required filling fees is a result of discretionary spending and an improper use of the IFP statute. For the foregoing reasons, Ortiz-Santiago's IFP motion is **DENIED**.

All further proceedings in this matter shall be held in abeyance for **twenty (21) days** pending Ortiz-Santiago's delivery of the filing fee in the amount of $405 (money order or bank check made payable to the Clerk of Court) to the Clerk's Office, 915 Lafayette Boulevard, Bridgeport, CT 06604. If Ortiz-Santiago fails to submit the filing fee within twenty-one days of

---

imprisonment of nine months. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=391066 (last visited September 11, 2024).

this Order, **his case will be dismissed without prejudice** to refiling once he is able to pay the fee.

So ordered.

Dated at Bridgeport, Connecticut, this 15th day of November 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge